## THE BROADWAY.

### THE NUMATIC.

(District Court, E. D. New York.    March 24, 1921.)

Towage ⬤⟾11(5)—Tug held at fault for grounding of tow while attempting to enter a narrow channel.

A steam tug, having two barges in tow, which attempted to enter a narrow channel with the barges rigidly fastened together in tandem, when the river was full of ice drifting with the tide, assumed the responsibility for the success of the maneuver, and is liable for injuries to the leading barge, which grounded at the mouth of the channel, whether those injuries were occasioned by straining against a mud bank or by contact with a hard bottom.

In Admiralty. Libel by John F. Hurley, owner of the barge Broadway, against the steam tug Numatic. Decree rendered for libelant.

Macklin, Brown, Purdy & Van Wyck, of New York City, for libelant.
Park & Mattison, of New York City, for claimant.

CHATFIELD, District Judge. It appears from the testimony that on January 7, 1920, the tug Numatic took from the sulphur dock at Erie Basin the Broadway and Scipio on an order from the charterers to the effect that the boats were loaded and ready to be towed to the Chemical Works at Shadyside. It was cold weather and the river was full of ice. From Fourteenth street up the river the boats were towed through the ice. But there is no evidence to show that any damage was suffered, or that the Numatic was unable to tow the vessels, with the flood tide and with the drifting ice, at whatever speed they did proceed, until the channel into the Chemical Works dock at Shadyside was reached. There it appears that the Numatic was unable to put the boats into the dock through this narrow channel, with the two boats abreast on hawsers substantially 100 feet in length.

At that point, so far as this case is concerned, the responsibility rested upon the Numatic to determine whether she could handle the two barges, or whether she would have to put one in at a dock while she landed the other. The tide and ice carried the tow upstream beyond the

⬤⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

entrance to the channel, and the Numatic gave signals to drop the Scipio astern of the Broadway to fasten them tandem, which was done. The Scipio was brought close up to the stern of the Broadway. The Numatic then turned around and proceeded down the river, against the tide and ice, apparently close to the outer end of the Corn Products dock, which was being rebuilt. According to the only definite testimony on this point, the new structure of this dock extended further out than the old structure, and the supposition on the part of the libelant that the boat may have hung on a pile or cribwork of the old dock is not supported by the testimony. The testimony shows, however, that the Numatic apparently was keeping as close in shore as possible, so as to avoid the tide and ice, and to get as quickly into the channel to the Chemical dock as she was able.

In so doing she either made a turn too soon or went downstream in such position that the tide carried her tow sideways inshore and up against what is evidently a dangerous shoal. It does not appear definitely from the testimony whether this shoal is made more dangerous by any definite wreck or obstruction, and, on the contrary, the testimony indicates that the boat went aground on a mud bank. But apparently the force of the tide and the ice and the momentum of the barges set them against this mud bank in such a way that the heavily laden Broadway, with the Scipio extending rigidly out into the current and, affected by the tide and the ice, was subjected to a strain which started her leaking. There is no evidence of external apparent injury from, and there is no reason to suppose that the leaking was caused by, a pile or obstruction which, of itself, pulled apart the seams or frame of the boat. But the responsibility for getting the boat in the situation in which she was rests with the tug, whether or not the injury was caused by a mud bank or by some hard substance in the mud bank.

I think the libelant has sustained the burden of proof that the Numatic was responsible for the way in which it approached the narrow channel in to the Chemical dock, and the result, namely, the damage that might be expected, if the maneuver was not executed successfully, and if the boat brought up on any obstruction. Under the circumstances, I think the libelant is entitled to recover for the failure on the part of the Numatic to appreciate the situation, and to estimate correctly her ability to take the barges in to this narrow channel under those circumstances, and keep them off from the shoal ground and the Chemical dock.

Such failure on the part of the tug in my opinion constitutes negligence, and the libelant may have a decree.